ADAM J. PERNSTEINER, ESQ.
Nevada Bar No. 007862
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada  89118
PH:    702.893.3383
FAX:   702.893.3789
E-Mail: Adam.Pernsteiner@lewisbrisbois.com

William M. Gantz (LR IA 11-2)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Telephone: (857) 488-4234
Email:  BGantz@duanemorris.com

Tyler R. Marandola (LR IA 11-2)
DUANE MORRIS LLP
30 S. 17th St.
Philadelphia, PA 19103
Telephone: (215) 979-1529
Email:  TMarandola@duanemorris.com

*Attorneys for Defendant 888 Holdings, PLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| CG TECHNOLOGY DEVELOPMENT, LLC, INTERACTIVE GAMES LIMITED, and INTERACTIVE GAMES LLC<br><br>Plaintiffs,<br><br>v.<br><br>888 HOLDINGS, PLC,<br><br>Defendant. | Case No.: 2:16-cv-00856-RCJ-GWF<br><br>Member Case:<br>2:16-cv-00871-RCJ-GWF<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant 888 Holding, PLC, by and through its counsel, Adam J. Pernsteiner, Esq., of LEWIS BRISBOIS BISGAARD & SMITH LLP, hereby brings the foregoing Summary Judgment pursuant to Federal Rule of Civil Procedure 56 ("Motion"). This Motion is based upon the papers and pleadings on file herein, the points and authorities attached hereto, the attached exhibits, and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9464-1653.1

1    any arguments made by counsel.

2

3    DATED this 10th day of August 2021.          Respectfully submitted,

4                                                  _/s/Adam J. Pernsteiner_____

5                                                 ADAM J. PERNSTEINER, ESQ.
                                                  LEWIS BRISBOIS BISGAARD & SMITH LLP
6                                                 Nevada Bar No. 7862
                                                  6385 S. Rainbow Boulevard, Suite 600
7                                                 Las Vegas, NV 89118

8                                                 William M. Gantz (LR IA 11-2)
                                                  DUANE MORRIS LLP
9                                                 100 High Street, Suite 2400
                                                  Boston, MA 02110
10                                                Telephone: (857) 488-4234
                                                  Email:  BGantz@duanemorris.com
11

12                                                Tyler R. Marandola (LR IA 11-2)
                                                  DUANE MORRIS LLP
13                                                30 S. 17th St.
                                                  Philadelphia, PA 19103
14                                                Telephone: (215) 979-1529
                                                  Email:  TMarandola@duanemorris.com
15

16                                                *Attorneys for Defendant 888 Holdings PLC*

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2

# **TABLE OF CONTENTS**

I.    INTRODUCTION...................................................................................................1

II.   CONCISE STATEMENT OF MATERIAL FACTS.............................................3

III.  CLAIM 17 OF THE '664 PATENT ......................................................................9

IV.   ARGUMENT .......................................................................................................10

     A.   The Court Can Decide Summary Judgment Without Formal Claim
         Construction. .............................................................................................11

     B.   888 Casino and 888 Poker Do Not Infringe Claim 17 of the '664 Patent
         Because They Do Not "Automatically Enable" and "Automatically
         Disable" FTP and RMG Gaming, as Claim 17 Requires. ..................................13

         1.   The plain and ordinary meaning of "automatically" is "without
             human intervention or input," and IG, LLC has disclaimed any
             contrary construction. ..............................................................................13

         2.   IG, LLC is Barred by Prosecution History Disclaimer from
             Arguing that "Automatically" Encompasses Any Player Input. ............15

         3.   888 Casino and 888 Poker Never Automatically Disable or
             Automatically Enable Points Wagering and Never Automatically
             Enables Monetary Wagering. ..................................................................19

     C.   888 Casino and 888 Poker Do Not Infringe Claim 17 of the '664 Patent
         Because None of 888's Games Have The Option to Wager a "Second
         Player Selected by the Player," as Claim 17 Requires. ...................................20

         1.   Claim 17 Requires That a Player Identify a Specific "Second
             Player Selected by the Player" as Part of the Player's Wager. ..............21

          2.   None of the 888 Casino or 888 Poker Games Permit the Player to
             Select a Specific Second Player Against Whom to Place a
             Challenge. ................................................................................................23

     D.   The Remaining Patents, RE39,818, 9,355,518,  9,306,952,  8,771,058,
         Were Invalidated in Relevant Part in IPR Proceedings, and Thus May Not
         be Asserted Against 888.....................................................................................25

IV.   CONCLUSION....................................................................................................26

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

*Adaptix, Inc. v. Motorola Mobility LLC,*
  2013 WL 8719054 (N.D. Cal. Dec. 19, 2013) ..........................................................22

4

5

*Alarm.com, Inc. v. SecureNet Technologies,*
  2018 WL 1665689 (D. Del. Apr. 6, 2018) ...............................................................14

6

7

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ...............................................................................................11

8

*Ballard Med. Products v. Allegiance Healthcare Corp.,*
  268 F.3d 1352 (Fed. Cir. 2001)..............................................................................11

9

10

*Berger v. Rossignol Ski Co.,*
  2006 WL 708943 (N.D. Cal. Mar. 21, 2006) .........................................................12

11

12

*Blonder-Tongue Labs, Inc. v. Univ. of Illinois Foundation,*
  402 U.S. 313 (1971) ...............................................................................................26

13

*Brown v. 3M,*
  265 F.3d 1349 (Fed. Cir. 2001) ..............................................................................13

14

15

*CG Technology, LLC v. FanDuel, Inc.,*
  442 F. Supp. 3d 840 (D. Del. 2020) .........................................................................1

16

17

*CollegeNet, Inc. v. ApplyYourself, Inc.,*
  418 F.3d 1225 (Fed. Cir. 2005).............................................................................14

18

*Eberle v. Harris,*
  2010 WL 6281563 (D.N.J. June 30, 2010) ............................................................12

19

20

*FanDuel, Inc. v. CG Technology Dev., LLC,*
  IPR2017-00902, Paper 45 (P.T.A.B. Oct. 4, 2018)................................................25

21

22

*FanDuel, Inc. v. Interactive Games LLC,*
  IPR2017-01333, Paper 42 (P.T.A.B. Nov. 8, 2018) ..............................................26

23

*FanDuel, Inc. v. Interactive Games LLC,*
  IPR2017-01491, Paper 38 (P.T.A.B. Nov. 20, 2018) ............................................26

24

25

*FanDuel, Inc. v. Interactive Games LLC,*
  IPR2017-01532, Paper 32 (P.T.A.B. Dec. 10, 2018).............................................26

26

27

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,*
  535 U.S. 722 (2002) ...............................................................................................16

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) ..............................................................26

*Indivior, Inc. v. Dr. Reddy's Labs., S.A.*,
    930 F.3d 1325 (Fed. Cir. 2019) ..............................................................11

*Innova/Pure Water, Inc. v. SafariWater Filtration Systems, Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004) ..............................................................14

*Mendenhall v. Barber-Greene Co.*,
    26 F.3d 1573 (Fed. Cir. 1994) ................................................................26

*Mobileye, Inc. v. Picitup Corp.*,
    928 F. Supp. 2d 759 (S.D.N.Y. 2013) ....................................................12

*Omega Engineering, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) .........................................................15, 18

*Osawe v. Tinsley*,
    2019 WL 3752967 (D. Nev. Aug. 8, 2019) (Jones, J.) ...........................11

*Papst Licensing GmbH & Co. KG v. Apple, Inc.*,
    2017 WL 897172 .....................................................................................14

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ....................................................12-13, 15

*Phoenix Licensing, L.L.C. v. AAA Life Ins. Co.*,
    2015 WL 1813456 (E.D. Tex. Apr. 20, 2015) ........................................14

*Pragmatus AV, LLC v. Yahoo! Inc.*,
    2014 WL 1961980 (D. Del. May 15, 2014) ............................................22

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002) ..............................................................15

*Schoenhaus v. Genesco, Inc.*,
    440 F.3d 1354 (Fed. Cir. 2006) ..............................................................12

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ................................................................13

*TecSec, Inc. v. Adobe Systems Inc.*,
    658 Fed. Appx. 570 (Fed. Cir. 2016) .....................................................22

*Teva Pharma. USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015) ................................................................................12

*Uship Intellectual Properties, LLC v. United States*,
    714 F.3d 1311 (Fed. Cir. 2013) ..........................................................18-19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Vehicle IP, LLC v. Werner Enters., Inc.*,
    4 F. Supp. 3d 648 (D. Del. 2013) ...........................................................................14

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................................13

**Other Authorities**

Federal Rule of Civil Procedure 5 ...................................................................................28

Federal Rule of Civil Procedure 56 ............................................................................1, 11

| Index of Exhibits | |
|---|---|
| **Exhibit** | **Title** |
| A | Declaration of Yaniv Sherman |
| B | U.S. Patent No. 8,814,664 |
| C | Cambridge Dictionary: Definition of "Automatic" |
| D | Merriam-Webster Dictionary: Definition of "Automatic" |
| E | MacMillan Dictionary: Definition of "Automatic" |
| F | Patent Application No. 13/689,218 |
| G | October 24, 2013 Office Action |
| H | Publication No. 2010/0069144 ("Curtis") |
| I | May 13, 2014 Notice of Allowability and Interview Summary |
| J | April 24, 2014 Response to Office Action |
| K | Complete File History for U.S. Patent No. 8,814,664 |

4841-9464-1653.1

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3    This case began in 2016 with Plaintiffs CG Technology Development, LLC; Interactive

4    Games Limited; and Interactive Games LLC alleging that the Defendant, 888 Holdings PLC's

5    ("**888**") "Accused Mobile Device Platform" infringed twelve patents owned by Plaintiffs. Only one

6    of these patents remains alive as to 888. Seven of the patents-in-suit were found to be invalid as

7    addressed to non-patentable subject matter. ECF No. 36 in Case No. 2:16-cv-00857; ECF No. 54

8    in Case No. 2:16-cv-00859. The claims of four other patents-in-suit asserted against 888 (RE39,818,

9    9,355,518, 9,306,952, 8,771,058) were found invalid as a result of IPR proceedings initiated by

10   parties other than 888, and those rulings are now final. *See* Joint Status Report, ECF No. 69 filed

11   in Case No. 2:16-cv-00871; *infra* Section III.D. 888 asks that this court enter judgment in its favor

12   (RE39,818, 9,355,518, 9,306,952, 8,771,058).[1]

13   Accordingly, all that remains of Plaintiffs' case against 888 is the allegation that 888's

14   offering under 888 Casino and 888 Poker, when operated on a player's mobile device, infringe claim

15   17 of U.S. Patent No. 8,814,664 (the "'664 Patent"). ECF No. 19, Am. Complaint, ¶¶ 117-132.

16   Plaintiff Interactive Games, LLC ("IG, LLC") asserts that it is the owner of the '664 Patent.

17   888 moves for summary judgment of non-infringement with respect to claim 17 of the '664

18   Patent for the simple reason that neither its 888 Casino nor its 888 Poker games infringe under a

19   plain reading of the claim. Claim 17 is directed to online gambling using a mobile device, but covers

20   only a very narrow iteration of that concept. Specifically, the limitations of claim 17 involve two

21   separate types of wagering: "monetary" wagering (i.e., real money games) and "points" wagering

22   (i.e., free-to-play games). Infringement of Claim 17 would require 888's games to automatically

23   shift between points wagering and "monetary" wagering, and *vice versa*, based on whether the

24   

_____

25   [1] The PTAB found claim 6 of the '058 Patent not invalid. However, following that IPR, the
26   District of Delaware (to which this Court transferred the *FanDuel* case, *see* ECF No. 58) held that
     claim 6 of the '058 was invalid as directed to ineligible subject matter. *CG Technology, LLC v.*
27   *FanDuel, Inc.*, 442 F. Supp. 3d 840 (D. Del. 2020). That decision is currently on appeal.
     However, Plaintiffs did not assert claim 6 against 888 in its initial infringement contentions, and
28   the Court granted 888's motion to strike the amended contentions seeking to add claim 6 against
     888 on September 6, 2017. ECF No. 102.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9464-1653.1

1    player is determined to be in a jurisdiction that allows real money gaming or not.

2         At a minimum, in order to infringe claim 17, 888 Casino and 888 Poker must, when a

3    player's device enters a jurisdiction that permits real money gambling (like New Jersey),

4    *automatically* disable free-to-play wagering and *automatically* enable real money gambling, and

5    *vice versa* when the player leaves that jurisdiction.  But 888's games have never operated in such a

6    manner.  For instance, an 888 user engaged in points only wagering will never be interrupted and

7    shifted over to real money gambling regardless of whether they enter a real money gaming

8    jurisdiction. In addition, a user engaged in real money gambling in a real money jurisdiction is never

9    automatically shifted to points only wagering when they leave the real money jurisdiction (although

10   888's application blocks users from gambling on real money when they are leaving such

11   jurisdiction).

12        And lastly, no matter which type of gaming is selected initially by the user, that initial

13   selection may occur only through manual steps taken by the user through the graphic user interface

14   ("GUI") on their mobile device, and any shift from one type of wagering to the other can only occur

15   when the user takes all of the manual steps necessary to exit the current gaming session, switch

16   gaming platforms, and manually initiate the other type of game.  In short, the shift from one type of

17   gaming to the other is never "automatic" because players must manually and affirmatively take steps

18   to change from one type of gaming to the other.  Accordingly, the central limitation of claim 17 is

19   not present in 888's games. Lastly,  Plaintiff is barred from claiming that a shift caused by human

20   intervention is somehow within the ambit of claim 17  because Plaintiff specifically disclaimed any

21   contrary interpretation of the term "automatic" during prosecution of the '664 Patent.

22        888 Casino and 888 Poker do not infringe for another reason.  Claim 17 requires that the

23   wager made by a player is made against a "second player ***selected by*** the player."  The prosecution

24   history confirms that this limitation requires that the player specifically choose a second player to

25   "challenge." But casino table games such as the ones in 888 Casino, are played against the house,

26   such that those games do not give a player the option to choose a specific second player to wager

27   against.  Rather, in the case of house-banked games, the player wagers on the outcome of a hand as

28   against the "dealer" or "banker" and not against a second player.  And in 888 Poker's games, a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

player's wager is never against a specific player "selected by the player," but is made against and must be acted upon (call, fold, raise) by every player at the virtual "table" remaining in the hand.

Accordingly, summary judgment in favor of 888 should be entered for at least the following reasons:

1)      888's 888 Casino and 888 Poker applications do not infringe Claim 17 of the '664 Patent because they do not automatically disable monetary wagering and automatically enable points-only wagering when it is determined that a mobile device is in a points-only wagering area;

2)      888's 888 Casino and 888 Poker applications do not infringe Claim 17 of the '664 Patent because they do not automatically disable points-only wagering and automatically enable monetary wagering when it is determined that the mobile device is in a monetary wagering area;

3)      888's 888 Casino and 888 Poker applications do not infringe Claim 17 of the '664 Patent because none of the games in 888 Casino or 888 Poker involve a first player making a challenge or wager directed to any specific "second player selected by the player";

4)      RE39,818, 9,355,518, 9,306,952, 8,771,058 have been invalidated by the PTAB in IPR Proceedings, and are thus invalid and may not be asserted against 888.  Judgment should be entered in favor of 888 as to these four invalidated patents.

This meritless case by Plaintiffs has carried on long enough.[2]  888 respectfully requests that the Court grant this motion for summary judgment and enter final judgment in favor of 888.

## II.      CONCISE STATEMENT OF MATERIAL FACTS

1.      888, together with its subsidiaries, is one of the world's leading online gaming companies. 888 has been publicly listed on the London Stock Exchange since 2005.  Decl. of Yaniv Sherman, attached as Exhibit A ("Decl.") ¶ 4.

2.      With respect to the United States, commencing in 2013, 888's operations have included state-licensed operation of online and mobile casino real money gambling platforms in

---

[2] Importantly, also, had Plaintiff's investigation prior to suit involved even a cursory use of the 888 applications accused of infringement, Plaintiff would have observed the obvious – there is no "automatic" shifting from free-to-play games to real money games, or *vice versa*. Plaintiff's action on the '664 Patent also demonstrably runs afoul of the express concessions made by Plaintiff during prosecution of the '664 Patent.  Both of these points were amply made to Plaintiff prior to filing of this motion, yet Plaintiff refused to withdraw the subject and suspect claim.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9464-1653.1                                      3

New Jersey, Nevada, Delaware and Pennsylvania where users may access a real money gaming platform and play the games on a personal computer, smart phone or tablet device.  Decl. ¶ 5.

3.      Since 2013, 888 has been licensed to offer real money gambling ("RMG") services to users who wish to play the online casino games in certain states which allow internet gambling and mobile gambling.  Decl. ¶ 6.

4.      In order to engage in RMG games, a user must register an account and verify his or her identity. After successful completion of the registration and verification process, RMG users may fund their account by purchasing virtual chips that correspond to the dollar amount deposited by the users in their account, which virtual chips then may be used to make wagers in virtual RMG games.  Decl. ¶ 7.

5.      Virtual chips purchased or accumulated by the user in in RMG gaming may be redeemed for cash by a request for payment, and the user will receive a payment in dollars in the form the user may choose, typically an ACH payment to a designated bank account.  Decl. ¶ 8.

6.      Only registered users using a device physically located within the geographic boundaries of an authorized state may access RMG games and gamble for the chance to win more chips that are, in turn, redeemable for a monetary payment.  Decl. ¶ 9.

7.      Under the law of each state in which 888 is licensed to operate real money gaming, 888 has at all times been required to verify the location of any device being used for real money wagering by using IP address, WiFi or GPS signals to determine the geographic location of the device on which the user is accessing the RMG platform.  Decl. ¶ 11.

8.      The process for determining location, which is generally referred to as "geolocation," utilizes services and methods that are well-known to the gaming industry. Decl. ¶ 11.  888 contracts with a third party to provide this service.

9.      888 Casino and 888 Poker have at all times blocked a user engaged in RMG from making a wager when his or her remote device is detected to be outside the jurisdiction permitting 888 to offer RMG gaming.  In such a case the user's mobile device receives a message that 888 has detected that the user is attempting to place a wager from outside a permitted jurisdiction, and that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  such conduct violates state law. The application further states that the user must cease and desist

2  from the conduct, and tells the user that the user's information has been logged[3]:



(Image retrieved 1/3/2017)

The user is then returned to game's lobby area.  Decl. ¶ 12.

10.     If a player's device is determined by geolocation to be located in a jurisdiction that

permits real money gambling, the player will be allowed to engage in RMG games.  Decl. ¶ 13.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] Images of 888 Poker are taken from Plaintiffs' Initial Disclosure of Asserted Claims and Preliminary Infringement Contentions.

11.    At all pertinent times, a player who wanted to play a RMG game had to take several manual steps.  On a mobile device, once a RMG user opens the gaming application (888 Casino or 888 Poker), if they are located in a RMG jurisdiction for 888's services, the user must manually select RMG gaming by using a sliding toggle button on the GUI and enter the lobby and select a game to play:



(Image retrieved 1/3/2017)

The game selected is then made available on the mobile device.  Decl. ¶ 14.

12.    The other type of gaming 888 has offered in the United States is a free-to-play simulated gaming experience.  Decl. ¶ 16.  In such free-to-play ("FTP') gaming, users may play online casino style games without purchasing any virtual chips, and they may play for the chance to win more chips only, as chips obtained or accumulated in FTP play are not redeemable for any monetary payment or prize.    *Id.*.  For FTP gaming, there are no cash or property prizes, chips cannot be redeemed for money or anything else, and chips cannot be transferred to any third party. *Id*.

13.    A user who wished to access 888's FTP gaming services still had to successfully complete  a registration and verification process, after which they  are allotted virtual FTP chips for

free, which may then be used to play online casino-style FTP games.  Decl. ¶ 18.  Users may access FTP games and play the FTP games from any geographic location.  Decl. ¶ 17.

14.     In order to access the FTP games, the registered user must open the 888 Casino or 888 Poker application, swipe the manual toggle bar to "Play Money," enter the FTP lobby and manually select the FTP game they wish to play, which is them made available to the mobile device: Decl. ¶ 19.



(Image retrieved 1/3/2017)

15.     Users may access and play the FTP games from any geographic location. Decl. ¶ 20. FTP games do not require location verification to launch, and therefore no geolocation is done before access is allowed to the FTP gaming lobby or games. *Id.*

16.     888 Casino and 888 Poker never interrupted or disabled a FTP game, regardless of a user's location, and never automatically switched a player from FTP to RMG gaming.  Decl. ¶ 22.

17.     Similarly, 888 Casino and 888 Poker never automatically switched a player from RMG to FTP games.  Although the players receive a block notice for RMG gaming while they are in a jurisdiction that does not permit such kind of gaming, the application does not automatically

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9464-1653.1                                         7

redirect the players to FTP gaming. Decl. ¶ 23.  Rather, the player would have to opt to slide the manual toggle on the GUI to "Play Money," and then enter an FTP game. *Id.*

18.     In order to switch from an FTP game to an RMG game on 888 Casino or 888 Poker, a player must have a registered and verified RMG account and would have to: (1) touch and select an option on the GUI in order to manually exit the FTP game and return to the main lobby page; (2) at the lobby page, touch the GUI and manually slide the virtual toggle from "Play Money" to "Real Money" with a physical sliding motion; and (3) touch the GUI on an icon for an available RMG game in the virtual lobby for RMG games and begin playing.  Decl. ¶ 25.

19.     In order to switch from a RMG game to an FTP game on 888 Casino or 888 Poker, a player must have registered and verified FTP account and would have to: (1) touch and select an option on the GUI in order to manually exit the RMG game and return to the main lobby page; (2) at the lobby page, touch the GUI and slide the virtual toggle from "Real Money" to "Play Money" with a physical sliding motion; and (3) touch the GUI on an icon for an available FTP game in the virtual lobby for FTP games and begin playing.  Decl. ¶ 26.

20.     888 Casino and 888 Poker never, for any reason, shifted a player between FTP gaming and RMG gaming, or *vice versa*, unless the player took all of the manual steps through the GUI to exit the existing game and operated the manual toggle switch in the lobby area of the 888 Casino or 888 Poker application to manually select either "Play Money" or "Real Money" gaming. Decl. ¶ 27.

21.     The FTP version of 888 Poker was discontinued in the United States on June 12, 2020.  Decl. ¶ 28.  The FTP version of 888 Casino remains available.  *Id.*

22.     888 Casino offers numerous games that permit a user to wager on certain outcomes, like slots, video poker, and scratch card games.  Decl. ¶ 30.

23.     In 888's slots, video poker, and scratch card games, the player makes a wager, and a computer program called a random number generator generates an outcome that is reflected in the virtual slot reels, the cards in a video poker hand, or the outcome of the scratch card.  Decl. ¶ 30.

24.     None of 888's slots, video poker, or scratch card games permit or have the option for a player to wager against a second player, or to select a second player to wager against.  Decl. ¶ 30.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

25.   888 Casino also offers virtual versions of casino table games, such as blackjack, baccarat, and poker table games.  Decl. ¶ 32.

26.   In 888's blackjack, baccarat, and poker table games, a player makes one or more wagers, and the random number generator is used to deal cards to both the player and the virtual "dealer" (or "banker" in the case of baccarat).  Decl. ¶ 32.

27.   The dealer or banker in 888's blackjack, baccarat, and poker table games is not an actual person.  Decl. ¶ 32.

28.   888's blackjack, baccarat, and poker table games do not permit or have the option for a player to wager against a human player, or to select a second player to wager against.  Decl. ¶ 32.

29.   888 Casino also offers virtual roulette, in which a player makes one or more wagers on various potential outcomes of the spin of the virtual roulette wheel.  Decl. ¶ 31.

30.   888's virtual roulette game does not permit or have the option of wagering against a second player, or to select a second player to wager against.  Decl. ¶ 31.

31.   888 Poker is a virtual online poker room where a player can engage in various virtual poker games against other human players over the internet or a mobile network.  Decl. ¶ 33.

32.   In 888 Poker games, such as Texas Hold'em, a player can make wagers during the hand on the outcome of the hand.  Decl. ¶ 33.

33.   The wagers go into a pool of money called the "pot," which is awarded to the player with the best hand among the players who have not folded at the end of the poker hand.  Decl. ¶ 33.

34.   In 888 Poker games, a player making a wager has no option to select a specific player to wager against.  Rather, a player's wager is made against any and all players at the virtual table who remain in the hand.  Decl. ¶ 34.

III.   **CLAIM 17 OF THE '664 PATENT**

Claim 17 is directed to an apparatus which causes a computing device to "automatically" disable monetary wagering and enable points-only wagering when it determines that a mobile device is in a points-only wagering area, and, conversely, "automatically" disable points-only wagering and enable monetary wagering when it determines that the mobile device is in a monetary wagering

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

area, as follows:

> 17. An apparatus comprising:
> a non-transitory medium having stored thereon a plurality of instructions that when executed by a computing device, cause the computing device to:
> determine that a mobile device associated with a first player is located in a first location that is designated as a non-monetary, points only wagering area;
> **in response to determining that the mobile device is located in the first location, automatically enable points wagering and automatically disable monetary wagering from the mobile device while the mobile device remains in the first location**;
> **receive, from the mobile device, a challenge by the first player, in which the challenge identifies an amount of points selected by the player and a second player selected by the player against whom to place the challenge**;
> in response to receiving the challenge, identify the challenge to the second player;
> receive an acceptance of the challenge from the second player;
> in response to receiving the acceptance, form a wager between the first player and the second player based on the challenge;
> adjust points in an account of a winning player of the challenge in response to determining an outcome of the challenge;
> determine mobile device is located in a second location that is designated as a monetary wagering area; and
> **in response to determining that the mobile device is located in the second location, automatically enable monetary wagering and automatically disable points wagering from the mobile device while the mobile device remains in the second location;**
> wherein the second location is geographically different from the first location.

'664 Patent, Claim 17 (emphasis added).  A copy of the '664 Patent is attached as Exhibit B.

## IV.   ARGUMENT

The plain language of claim 17 requires that the subject "computing device" do several things: First, the computing device must automatically switch back and forth between monetary and points wagering based on location.  Second, the computing device must receive, from the mobile device, a challenge by a player which identifies an amount of points and a "second player selected by the player" against whom to place the challenge.  After this challenge is sent by the mobile device of the first player, the computing device must present the challenge to the second player; receive acceptance from the second player, form a wager, and adjust points in the account of the winning player in response to the outcome.

The absence of any one of these limitations of Claim 17 is fatal to IG, LLC's claim for infringement against 888.  For the reasons established below, there is no issue of material fact that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the "automatic" enabling/disabling function is not present in the 888 Casino and 888 Poker applications, that none of the games at issue involve the selection of a specific second player to wager against, and that IG, LLC is furthermore barred from contending that the claims cover the functionality in the 888 Casino and 888 Poker applications because the applicant for the '664 Patent disclaimed any such construction during prosecution.

The court should grant summary judgment when the record shows that there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists only where the evidence is sufficient for the jury to find for the non-moving party, while a factual dispute is "material" only if it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, the party seeking summary judgment does not bear the burden at trial on the issue in question, it can satisfy its summary judgment burden by "demonstrating that the other party failed to establish an essential element of the claim or by presenting evidence that negates such an element." *Osawe v. Tinsley*, 2019 WL 3752967, at *2 (D. Nev. Aug. 8, 2019) (Jones, J.). Once the moving party meets that summary judgment burden, it is up to the non-moving party to come forward to demonstrate a genuine issue for trial. *Id.*

## A. The Court Can Decide Summary Judgment Without Formal Claim Construction.

An infringement analysis is a two-step process. First, the court must construe the asserted claim. *Indivior, Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019). Second, "the court determines whether the accused product meets each limitation of the claim as construed." *Id.* On summary judgment, the court need only "construe[] the claims to the extent necessary to determine whether the accused device infringes." *Ballard Med. Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

While the Court must construe the claims in order to determine if the accused product infringes, a formal claim construction hearing is not necessary. Rather, the court can "approach the task [of claim construction] in any way that it deems best"—including deciding the matter at the summary judgment stage. *Id.* Numerous decisions support construing relevant claim terms on

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   summary judgment in order to assess a non-infringement defense.  *Schoenhaus v. Genesco, Inc.*,

2   440 F.3d 1354, 1356 (Fed. Cir. 2006) (affirming judgment of non-infringement where court "did

3   not issue a separate *Markman* order, and instead construed relevant terms on summary judgment);

4   *Mobileye, Inc. v. Picitup Corp.*, 928 F. Supp. 2d 759, 767 (S.D.N.Y. 2013) (finding that claim

5   construction issues relevant to non-infringement "involve no genuine dispute of material fact, and

6   thus are amenable to summary judgment); *Eberle v. Harris*, 2010 WL 6281563, at *5 (D.N.J. June

7   30, 2010) (construing claims on summary judgment where construction presented a purely legal

8   issue based only on intrinsic record); *Berger v. Rossignol Ski Co.*, 2006 WL 708943, at *2 (N.D.

9   Cal. Mar. 21, 2006) (holding that claim construction could be decided on summary judgment where

10  "the technology is simple and defendant bases its non-infringement contentions on plaintiffs'

11  admissions").  These decisions recognize that where, as here, claim construction turns on intrinsic

12  evidence—i.e., the patent claims, the specification, and the prosecution history—construction

13  presents a pure issue of law.  *Teva Pharma. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015).

14          Here, it is appropriate for the Court to construe the claim terms at issue on this motion—

15  "automatically" and "selected by the player"—because they use only commonly understood words

16  with straightforward meanings.  This is therefore a case in which the "ordinary meaning of claim

17  language as understood by a person of skill in the art may be readily apparent even to lay judges,

18  and claim construction in such cases involves little more than the application of the widely accepted

19  meaning of commonly understood words."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir.

20  2005).   As such, as the Federal Circuit has noted, the Court may turn to "general purpose

21  dictionaries" to assess a term's plain meaning.  *Id.*

22          Moreover, as set forth in more detail below, IG, LLC is barred from arguing any

23  constructions of the terms "automatically" and "selected by the player" other than those proffered

24  by 888 here, because the applicant clearly disclaimed any contrary meanings during prosecution of

25  the '664 Patent.  As such, there can be no dispute over the constructions of "automatically" and

26  "selected by the player," and summary judgment is appropriate.

27  / / /

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9464-1653.1                                    12

**B.**     **888 Casino and 888 Poker Do Not Infringe Claim 17 of the '664 Patent Because They Do Not "Automatically Enable" and "Automatically Disable" FTP and RMG Gaming, as Claim 17 Requires.**

Plaintiffs' action under Claim 17 of the '664 Patent is brought in disregard of the obvious lack of any automatic switching between FTP gaming (called "points" wagering in the claim) and RMG gaming (called "monetary" wagering in the claim) based upon changes in location of a user device.  Had IG, LLC conducted a cursory pre-filing investigation experiment utilizing the accused application, it would have been evident that there is no automatic enablement of RMG wagering and concomitant automatic disablement of FTP wagering when the device enters into a gaming jurisdiction, or, any automatic enablement of FTP wagering and automatic disablement of RMG wagering when the device leaves the gaming jurisdiction.  Decl. ¶¶ 22-26.

**1.**     **The plain and ordinary meaning of "automatically" is "without human intervention or input," and IG, LLC has disclaimed any contrary construction.**

The words in a patent claim "are generally given their ordinary and customary meaning" as understood by a person of skill in the art.  *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  As noted above, where, as here, the ordinary meaning is "readily apparent," then claim construction involves "little more than the application of the widely accepted meaning of commonly understood words."  *Id.* at 1314; *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that common words that were "not technical terms of art" did "not require elaborate interpretation").  In assessing the meaning of a claim, the court should look first to the intrinsic record—the "patent itself, including the claims, the specification and, if in evidence, the prosecution history."  *Vitronics*, 90 F.3d at 1582.  "Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history, as well as the specification and other claims, must be examined to determine the meaning of the claims."  *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).  Specifically, the prosecution history "limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution," because a patentee cannot urge that claims "be construed one way in order to obtain their allowance and in a different way against accused infringers."  *Id.*

1    Here, the Court should construe "automatically" in the context of claim 17 of the '664 Patent

2    to mean "without player input."  As an initial matter, "automatically" is a common, non-technical

3    word with a well understood meaning.  Although a patentee can decide to act as its own

4    "lexicographer" by providing a special definition in the specification, *Innova/Pure Water, Inc. v.*

5    *SafariWater Filtration Systems, Inc.*, 381 F.3d 1111, 1116-17 (Fed. Cir. 2004), Plaintiffs have not

6    done so here.  Indeed, because the term "automatically" was added to the claims as a result of an

7    Examiner's amendment during prosecution, the specification does not use the term "automatically"

8    at all in describing the enabling and disabling of monetary and points wagering.  The specification

9    does, however, support that "automatically" means "without player input" by, for example,

10   describing embodiments in which an application switches "seamlessly" between monetary and

11   points wagering.  '664 Patent, at 9:44-49.  Moreover, the claim itself supports that the player is not

12   involved in initiating the enabling and disabling of monetary and points wagering.  According to the

13   claim, enabling and disabling happens automatically "in response to determining that the mobile

14   device" is in a particular location, rather than in response to any player input.  '664 Patent, Claim

15   17.

16   Accordingly, "automatically" should be construed to have its plain and ordinary meaning,

17   which numerous courts have found to be "without user input" or otherwise not requiring human

18   action.  *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005) (affirming

19   construction of "automatic" as "once initiated, the function is performed by a machine, without the

20   need for manually performing the function"); *Alarm.com, Inc. v. SecureNet Technologies*, 2018 WL

21   1665689, at *1 (D. Del. Apr. 6, 2018) ("automatically" and variants construed to mean "without

22   user input"); *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, 2017 WL 897172, at *18 ("automatic"

23   and "automatically" construed to mean "without user intervention"); *Phoenix Licensing, L.L.C. v.*

24   *AAA Life Ins. Co.*, 2015 WL 1813456, at *11 (E.D. Tex. Apr. 20, 2015) ("automatically" construed

25   to mean "performed by a computer without input from a human"); *Vehicle IP, LLC v. Werner*

26   *Enters., Inc.*, 4 F. Supp. 3d 648, 662 (D. Del. 2013) ("automatically" construed to mean "performing

27   by machine, without the need for human intervention, at a predetermined point in an operation").

28   / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    This is also the definition supported by various general purpose dictionaries.  *See, e.g.*,

2  "Automatic" in Cambridge Online Dictionary ("An automatic machine or device is able to operate

3  independently of human control")[4]; "Automatic" in Merriam-Webster Online Dictionary ("done or

4  produced as if by machine")[5]; Macmillan Online Dictionary ("an automatic machine or process

5  works by itself rather than being operated by people").[6]  The Court may rely on such dictionaries

6  when determining the ordinary meaning of commonly understood words.  *Phillips*, 415 F.3d at 1314.

7  Thus, the Court should construe automatically to have its ordinary meaning in the context of the

8  claims of "without player input."

9             **2.    IG, LLC is Barred by Prosecution History Disclaimer from Arguing
10                    that "Automatically" Encompasses Any Player Input.**

11   The plain meaning of automatically is sufficient to demonstrate that 888's accused platform

12  does not infringe claim 17 of the '664 Patent.  But the prosecution history further confirms that

13  Plaintiffs, by amendment, disclaimed any interpretation of automatically that would involve player

14  input.  Prosecution disclaimer "preclude[s] patentees from recapturing through claim interpretation

15  specific meanings disclaimed during prosecution."  *Omega Engineering, Inc. v. Raytek Corp.*, 334

16  F.3d 1314, 1323 (Fed. Cir. 2003); *see also Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed.

17  Cir. 2002) ("The prosecution history limits the interpretation of claim terms so as to exclude any

18  interpretation that was disclaimed during prosecution." (quoting *Southwall Technologies, Inc. v.*

19  *Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995)).  Prosecution disclaimer thus applies

20  wherever an amendment or argument "unequivocally disavowed a certain meaning to obtain [the]

21  patent."  *Omega Engineering*, 334 F.3d at 1324.  A determination of prosecution disclaimer takes

22  into account the "totality of the prosecution history, which includes amendments to claims and

23  arguments made to overcome or distinguish references."  *Rheox*, 276 F.3d at 1326.

24   As it is particularly relevant here, prosecution disclaimer occurs where an applicant faces a

---

25  [4] A printout of the referenced page is attached as Exhibit C, and available at
     https://dictionary.cambridge.org/us/dictionary/english/automatic.

26  [5] A printout of the referenced page is attached as Exhibit D, and available at
27  https://www.merriam-webster.com/dictionary/automatic.

    [6] A printout of the referenced page is attached as Exhibit E, and available at
28  https://www.macmillandictionary.com/us/dictionary/american/automatic_1.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

rejection based on prior art, the "decision to forgo an appeal and submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 734 (2002).  As explained below, that is precisely what Applicant did with respect to the term "automatically."

As originally filed, claim 17 (then labeled as Claim 4) did not include the term "automatically."  Rather, the limitations required only that the claimed computing device "enable" and "disable" monetary and points wagering, without any qualification as to how enabling and disabling was to be accomplished:

> in response to determining that the mobile device is locate in the first location, enable points wagering and disabling monetary wagering from the mobile device

and

> in response to determining that the mobile device is located in the second location, enable monetary wagering and disable points wagering from the mobile device

Ex. F, Nov. 29, 2012 Application, at page 48-49, Claim 4.[7]

The Examiner rejected Claim 4 on the ground that it was anticipated by a prior published patent application, U.S. Patent Application Publication No. 2010/0069144, referred to as "Curtis." Ex. G, Oct. 24, 2013 Non-Final Rejection, at 3-6.  As the Examiner explained, Curtis already taught a system that determined whether a computing device is in a monetary wagering or points wagering jurisdiction, and disabled or enabled monetary or points wagering on that basis.  *Id.* at 3, 5.  Indeed, Curtis included the following description in paragraphs 15 and 16 of the published application:

> In one embodiment, the wager manager is jurisdictionally aware such that monetary wagers are only permitted when the users involved in the wager are located within a jurisdiction that allows monetary wagers. . . . When the users involved in a wager are located within a jurisdiction that does not allow monetary wagers, points or virtual chips may be used instead of money."

Ex. H (Curtis), at ¶¶ 15-16.

---

[7] In the interest of completeness, 888 has included the full file history for the '664 Patent as Exhibit K.  The documents from the file history that are specifically cited herein are also included as separate exhibits for the Court's convenience.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

The next action by the Examiner was to initiate an interview with the Applicant.  The interview took place on May 6, 2014, and is summarized in an attachment to the Notice of Allowance issued on May 13, 2014.  During that interview, Applicant again argued that "Curtis failed to disabled [*sic*] points wagering while in the monetary wagering area."  Ex. I, May 13, 2014 Examiner Initiated Interview Summary attached to Notice of Allowability.   In response, the Examiner and Applicant discussed amending the claims to avoid Curtis:

> Moreover, the Applicant's arguments indicated that Curtis failed to disabled [*sic*] points wagering while in the monetary wagering area.  The Examiner explained that such limitation is met by a player simply stopping points wagering and shifting to monetary wagering, as the claimed invention did not specific [*sic*] any specifics to automatic means of disabling points wagering, versus a player opting to disable points wagering.  Therefore, in view of these arguments, the Examiner presented a set of proposed amendments to overcome any further potential interpretations of Curtis.   For instance, the proposed amendments incorporated . . . that when the mobile device is determined to be in the second location, ***automatically, by the computing device (i.e. no player input required) disabling points wagering from the mobile device***.   Other amendments were made for clarity and consistency.  Ultimately, the Applicant ***agreed to a set of proposed claim amendments as detailed in the Examiner's Amendment section of the attached Notice of Allowability***.  Consequently, the interview resulted in the allowance of the instant application.[8]

Ex. I (Examiner Initiated Interview Summary).

The Examiner accordingly proposed an Examiner's Amendment to the claims, to which Applicant agreed, as reflected in the Notice of Allowability issued on May 13, 2014:

> in response to determining that the mobile device is located in the first location, **automatically** enable points wagering and **automatically** disabling monetary wagering from the mobile device while the mobile device remains in the first location

> and

> in response to determining that the mobile device is located in the second location, **automatically** enable monetary wagering and **automatically** disable points wagering from the mobile device while the mobile device remains in the second location

Ex. I (Examiner's Amendment attached to Notice of Allowability), at 4-5.

The Notice of Allowance issued by the Examiner made clear that this amendment was

---

[8] The examiner also proposed, and Applicant accepted, an amendment to require that the wager proposed by the first player "indentif[y] a second player whom to place the wager against as being a specific second player, such as by selection of the player."  Ex. I (Examiner's Amendment attached to Notice of Allowability), at 4-5.  That amendment also dooms Plaintiffs' infringement theory, as discussed *infra*.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

crucial to the decision to allow claim 4 (now claim 17) and issue the '664 Patent.  The "Reasons for Allowance" provides:

> The prior art specifically lacks a disclosure of a computing device automatically disabling points wagering from the mobile device when in a monetary wagering area. That is, prior art systems that incorporate monetary and non-monetary wagering based on location enable players to engage in both types of wagering within a monetary wagering area, but restrict monetary wagering within a non-monetary wagering area. Accordingly, the prior art fails to explicitly disclose, teach, or suggest an **automatic means of disabling points wagering from a mobile device when it is determined the mobile device is in a monetary wagering area.** Consequently, claims 1-21 are allowed."

Ex. I, May 13, 2014 Notice of Allowability and Fees Due, at 9.

The Applicant's arguments and amendment to the claims to overcome Curtis are a disclaimer of any interpretation of "automatically" other than enabling and disabling monetary and points wagering other than with "no player input required."  As demonstrated above, the patentee pointedly amended the claim to add the "automatic" enabling and disabling limitations to overcome prior art rejections.  Specifically, the patentee narrowed the claim from "enable monetary wagering and disable points wagering from the mobile device" to "**<u>automatically</u>** enable monetary wagering and **<u>automatically</u>** disable points wagering from the mobile device while the mobile device remains in the second location," and did so to avoid encompassing "a player opting to disable points wagering." Ex. I (Examiner's Amendment attached to Notice of Allowability), at 4-5.  The applicant's statements here, coupled with the claim amendments, are exactly the sort of "clear and unmistakable" disclaimer required for prosecution disclaimer to apply.  *Omega Eng'r*, 334 F.3d at 1326.

*Uship Intellectual Properties, LLC v. United States*, 714 F.3d 1311 (Fed. Cir. 2013), confirms that applicant's statements rose to the level of disclaimer.  In *Uship*, the patent at issue claimed a method for shipping parcels that included printing a label and "validating" that the parcel was the correct parcel for which the label was printed.  *Id.* at 1313.  The parties' central dispute was whether the "validating" step had to be performed by a machine, or whether it also encompassed validation by a human.  *Id.*  The Federal Circuit held that the patentee disclaimed any human

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

performance of the validation step by stating during prosecution that all the claims were drawn to an "automated shipping machine" and that the "automated shipping machine" described in the preamble of the claims performed all the steps of the claim. *Id.* at 1315.

Applicant's disclaimer here was even more explicit than the one upheld by the Federal Circuit in *Uship*. Applicant in *Uship* disclaimed human validation simply by *describing* its invention during prosecution as using an "automated shipping machine." Here, Applicant argued that the claims required automatic disablement, *and amended the claims* to explicitly require automatic disablement "***versus a player opting to disable points wagering***."

Accordingly, for the purposes of deciding this motion, the Court should hold that "automatically" has its plain and ordinary meaning in the context of the claims: "without player input."

### 3. 888 Casino and 888 Poker Never Automatically Disable or Automatically Enable Points Wagering and Never Automatically Enables Monetary Wagering.

888 Casino and 888 Poker are non-infringing as a matter of law because, regardless of the interpretation of "disable" and "enable", FTP gaming is never disabled or enabled without human input, and specifically by a human choosing to toggle a virtual slider between "Play Money" and "Real Money" gaming. FTP gaming was always available to play on a player's device, regardless of location. Indeed, 888 Casino and 888 Poker FTP games did not require location verification to launch or play at all, and do not initial a location verification request until the player manually selects "Real Money" gaming using a virtual toggle. Decl. ¶¶ 20-21. And even when a player engaged in an FTP game crosses into a jurisdiction that allows RMG gaming, the player is never automatically switched from FTP gaming to RMG gaming, and the game never interrupts an FTP game while it was ongoing. Decl. ¶ 22. Rather, the applications always allowed a player to continue to play the same FTP game irrespective of location. Decl. ¶¶ 22-24.

In order to "disable" FTP gaming (regardless of the interpretation of disable) and "enable" RMG gaming, a player has to take several manual steps after entering a jurisdiction that allows RMG gaming, such as by going over the bridge from New York into New Jersey. Decl. ¶¶ 24-25. In order for a player to switch from a FTP game to an RMG game, the player would need to: (1)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9464-1653.1                                   19

touch and select an option on the GUI in order to manually exit the FTP game and return to the main lobby page; (2) at the lobby page, touch the GUI and manually slide the virtual toggle from "Play Money" to "Real Money" with a physical sliding motion; and (3) touch the GUI on an icon for an available RMG game and begin playing.  Decl. ¶ 25.  Put simply, a player must always "opt[] to disable points [FTP] wagering,"  which is precisely the functionality that was disclaimed in prosecution.  Ex. I (Examiner interview summary stating that amendment to claim 17 was necessary to avoid covering "a player simply stopping points wagering and shifting to monetary wagering").

Similarly, a player's device never automatically "enables" FTP gaming; the player must always opt to enable FTP gaming and disable RMG gaming by using the virtual toggle switch and taking the other manual steps set out above.  Decl. ¶ 26.  Player input is always required to shift between FTP gaming and RMG gaming, or *vice versa*.  Decl. ¶¶ 25-26.  These basic facts concerning the operation of 888 Casino and 888 Poker, all of which were available to Plaintiff pre-filing, make it impossible for the shift between FTP and RMG gaming to be automatic and moreover makes it clear that the location of the user device during FTP games is not being determined.

Accordingly, 888 Casino and 888 Poker do not infringe as a matter of law because they do not meet the "automatically enable" and "automatically disable" limitations of claim 17.   888 respectfully requests that the Court enter summary judgment in its favor on claim 17.

**C.**     **888 Casino and 888 Poker Do Not Infringe Claim 17 of the '664 Patent Because None of 888's Games Have The Option to Wager a "Second Player Selected by the Player," as Claim 17 Requires.**

888 Casino and 888 Poker are also non-infringing as a matter of law because the claims require, at least with respect to points wagering, that the player making a wager specifically select a second player to place the "challenge" against:

> receive, from the mobile device, a challenge by the first player, in which the challenge identifies an amount of points selected by the player and a ***second player selected by the player*** against whom to place the challenge

'664 Patent, claim 17 (emphasis added).

Any reasonable pre-filing investigation in this case would have shown what anyone with a cursory understanding of casino games already knows: the virtual house-banked games and poker games at issue in 888 Casino and 888 Poker have no mechanism that allows a player to "select"

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

another player to challenge.  Rather, in certain games a player's wager is a solitary bet on the outcome of a particular event, whether it be in the reels on the slot machine, a video poker hand, or what will be revealed on a virtual scratch card.  In others, a player's wager is against a hand of cards held by the "dealer" or the "banker," which is not an actual player, but represents the house.  And in virtual poker games, a player's wager is addressed to and must be acted upon by any other player at the table who remains in the hand.  In none of these instances, however, does a player have the option to "select" a specific other player to wager against.  Accordingly, summary judgment is appropriate.

> 1. **Claim 17 Requires That a Player Identify a Specific "Second Player Selected by the Player" as Part of the Player's Wager.**

As with the term "automatically," "selected by the player" is not a term of art or technical term, and no special definition of the term appears in the specification of the '664 Patent. Accordingly, it should be construed to have its ordinary meaning, which requires the player to specifically choose the second player.  The specification of the '664 Patent confirms this.  In a section titled "Wagering Against Another Player Examples," the specification describes the selection through an "interface such as that of FIG. 4" that allows a player to "choose to place a wager for an amount of points against another player" and to "select one or more friends" to place the wager against.  '664 Patent at 4:49-53.  Figure 4 makes clear that "select" means choosing a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

specific second player:



FIG. 4

'664 Patent, Figure 4.

Several courts have confirmed the ordinary meaning of "select" or "selected" as requiring the user to make a choice. *See TecSec, Inc. v. Adobe Systems Inc.*, 658 Fed. Appx. 570, 578 (Fed. Cir. 2016) ("selecting a label" given plain meaning of "choosing" a label); *Pragmatus AV, LLC v. Yahoo! Inc.*, 2014 WL 1961980, at *23 (D. Del. May 15, 2014) (construing "selected" as "user-chosen"); *Adaptix, Inc. v. Motorola Mobility LLC*, 2013 WL 8719054, at *1 (N.D. Cal. Dec. 19, 2013) ("selecting" = "choosing").

Additionally, and crucially, just as with the term "automatically," the applicant here disclaimed any construction of "second player selected by the player" not involving the player choosing a specific second player against whom to place the wager. When the application was filed, the term "selected by the player" did not appear in claim 4 (now claim 17):

> receive, from the mobile device, a challenge by the first player, in which the
> challenge identifies an amount of points and a second player against whom to
> place the challenge

Ex. F, Nov. 29, 2012 Application, at page 48-49, Claim 4.   The Examiner rejected claim 4 as anticipated by Curtis, and noted that Curtis discloses "a first player generates challenges by selecting a desired type of wager for a wagerable event, an amount of points, and one or more second players to whom the challenge will be transmitted." Ex. G (Oct. 24, 2013 Non-Final Office Action).   In response, Applicant argued that Curtis did not disclose "that the first user identifies any second user"; rather, according to Applicant, Curtis disclosed the wager being "presented to any users in a geographic area." Ex. J, April 24, 2014 Response to Office Action, at 9.

At the Examiner interview on May 6, 2014, the parties discussed Curtis, and Applicant made the same argument.  But, as the Examiner did not agree, and stated that Applicant's claims did not specifically require the first player to select a specific second player to challenge.   Ex. I (Examiner Initiated Interview Summary) ("the claimed invention was not as specific as indicating the player actually selects a second player to challenge").   Thus, as with "automatically," the Examiner proposed and Applicant accepted an amendment to the claim to "incorporate the challenge including a second player specifically selected by the first player for whom to challenge." *Id.*  Accordingly, the amendment incorporated the language "selected by the player":

> receive, from the mobile device, a challenge by the first player, in which the challenge identifies an amount of points **selected by the player** and a second player **selected by the player** against whom to place the challenge

Ex. I (Examiner's Amendment), at 4.  Again, this amendment was a clear disclaimer of claim scope, and specifically of any definition of "selected" that does not involve "a second player specifically selected by the first player."  Accordingly, claim 17 unambiguously requires that the "challenge" required by the claim specifically identify: (1) an amount of points to be wagered; and (2) a second player against whom to place the challenge.

### 2.    None of the 888 Casino or 888 Poker Games Permit the Player to Select a Specific Second Player Against Whom to Place a Challenge.

Even a cursory understanding of online gaming and 888's accused applications is sufficient to determine non-infringement as a matter of law here, because none of the games at issue involve a first player selecting a specific second player against whom to place a challenge.  As relevant here,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

888 Casino[9] offers two main types of games, neither of which involve the option to select a second player to challenge:

- **Slots, video poker, scratch cards, and roulette.** In 888 Casino's online variations, each of these games is solitary, in that they are played by oneself, and the only wager at issue is the player's wager on the outcome of the game, whether it be the slot reels, the video poker hand, the reveal of the scratch card, or where the ball lands in the roulette wheel. Decl. ¶ 30. None of these games permit a player to wager against any second player or against anyone else at all. *Id.*

- **Virtual casino table games, such as blackjack, baccarat, and poker table games.** 888 Casino also offers virtual versions of the casino table games blackjack, baccarat, and poker variations. These too are solitary games in which there are no other human players at the table. Rather, the player wagers on the outcome of his or her hand as against the dealer's hand (or, in the case of baccarat, wagers on whether the outcome will be in favor of the "player" the "banker," or will be a "tie"). Decl. ¶ 32. These games do not allow a player the option to select another player to wager against, and indeed there are no other human players at all. *Id.*

Accordingly, because none of the 888 Casino games permit the player to select a second player to wager against (and, indeed, none even include a second player to wager against), 888 is entitled to summary judgment of non-infringement as to 888 Casino.

888 Poker, in contrast to 888 Casino, is a virtual poker room that allows players to engage in poker games against other live, human players at a virtual table. 888 Poker offers different poker variations, but they all work similarly. Players are seated around the virtual table, and they are dealt cards to play for the hand, and the hand sometimes also involves "community" cards that are dealt

---

[9] The claim chart for Plaintiff's infringement contentions with respect to the '664 Patent, served on January 5, 2017, did not identify any 888 Casino games that Plaintiffs claim infringe claim 17. Rather, they were based solely on 888 Poker which, as set forth below, involved other human players while none of the 888 Casino games do. However, Plaintiffs cover pleading reserved the right to claim that any aspect of "888 Holdings' social casino platform" infringes, including "at least the 888 Poker and 888 Casino platforms." Accordingly, 888 addresses the non-infringement of 888 Casino in this motion.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   face up and can be seen by anyone.  Decl. ¶ 33.  The players can make wagers during the hand,

2   which go into a central pot that is awarded to the player who wins the hand (meaning the player with

3   the best hand among the players that have not folded by the end of the hand).  Decl. ¶ 33.  A player

4   who makes a wager during a poker hand has no option to select a specific second player against

5   whom to place the wager.  Decl. ¶ 34.  Rather, in a hand of poker, the wager is addressed to all

6   players who remain in the hand at the table, who must act  upon it by folding, matching the wager

7   ("calling"), or raising the wager.  Decl. ¶ 34.

8   These fundamental rules of poker preclude infringement here.  Applicant amended claim 17

9   to require that the "challenge" identify a specific second player selected by the challenging player

10  against whom to place the challenge.  Poker simply does not work that way.  Rather, like the

11  wagering in the *Curtis* reference, which was directed to unspecified people in the user's geographic

12  location, a wager on a hand in poker is directed to everyone at the table who remains in the hand.

13  Accordingly, the Court should enter judgment in 888's favor that 888 Poker does not infringe

14  claim 17 of the '664 Patent.

15

16  **D.      The Remaining Patents, RE39,818, 9,355,518,  9,306,952,  8,771,058, Were
            Invalidated in Relevant Part in IPR Proceedings, and Thus May Not be
17          Asserted Against 888.**

18  As the parties set out in their stipulated motion to stay pending *inter partes* review, the four

19  remaining patents, RE39818; 9,355,518; 9,306,952; and 8,771,058 were challenged in IPRs before

20  the Patent Trial and Appeal Board.  ECF No. 133.  The Court granted the motion to stay pending

21  the outcome of those IPRs.  ECF No. 134.

22  As concerns 888, the IPRs are now finally resolved and have led to the cancellation of all

23  claims asserted against 888.  Specifically, as the parties reported in their December 19, 2018 Status

24  Report (ECF No. 143), the PTAB made the following rulings with respect to each patent:

25  •   **RE'818**: On October 4, 2018, the PTAB issued a final written decision cancelling claims 1,

26      16, 20, 21, 24, 25, 31, and 32 as unpatentable on the grounds of obviousness.  *FanDuel, Inc.*

27      *v. CG Technology Dev., LLC*, IPR2017-00902, Paper 45 (P.T.A.B. Oct. 4, 2018).

28  •   **'952**: On November 8, 2018, the PTAB issued a final written decision cancelling claims 1-

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

3, and 6 as unpatentable on the grounds of obviousness. *FanDuel, Inc. v. Interactive Games LLC*, IPR2017-01333, Paper 42 (P.T.A.B. Nov. 8, 2018).

- **'058**: On November 20, 2018, the PTAB issued a final written decision cancelling claims 1, 7-9, and 19 as unpatentable on the ground of obviousness. *FanDuel, Inc. v. Interactive Games LLC*, IPR2017-01491, Paper 38 (P.T.A.B. Nov. 20, 2018). In the same decision, the PTAB held that claim 6, which is not asserted against 888 here, was not unpatentable on the grounds asserted in the petition. *See supra* n1.

- **'518**: On December 10, 2018, the PTAB issued a final written decision cancelling claims 9, 11-13, and 21 as unpatentable on the grounds of obviousness. *FanDuel, Inc. v. Interactive Games LLC*, IPR2017-01532, Paper 32 (P.T.A.B. Dec. 10, 2018).

Each of the decisions above is now final, either because it was affirmed on appeal, because no appeal was taken, or because the appeal was dismissed. ECF No. 69 filed in Case No. 2:16-cv-00871. Accordingly, because each of the claims asserted against 888 has been held invalid by a final decision of the PTAB, summary judgment must be granted in 888's favor. "[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013); *see also Blonder-Tongue Labs, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 328-29 (1971) (judgment of invalidity estops patent owner from asserting patent in other cases)*; Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1578 (Fed. Cir. 1994) (same).

Accordingly, 888 is entitled to judgment in its favor with respect to the RE'818, '952, '058, and '518 Patents.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IV.    **CONCLUSION**

For all the foregoing reasons, Defendant respectfully requests that the Court grant this motion for summary judgment and enter final judgment in favor of 888.

DATED this 10th day of August, 2021.          Respectfully submitted,

 /s/Adam J. Pernsteiner
ADAM J. PERNSTEINER, ESQ.
LEWIS BRISBOIS BISGAARD & SMITH LLP
Nevada Bar No. 7862
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, NV 89118

William M. Gantz (LR IA 11-2)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA 02110
Telephone: (857) 488-4234
Email:  BGantz@duanemorris.com

Tyler R. Marandola (LR IA 11-2)
DUANE MORRIS LLP
30 S. 17th St.
Philadelphia, PA 19103
Telephone: (215) 979-1529
Email:  TMarandola@duanemorris.com

*Attorneys for Defendant 888 Holdings PLC*

1

### CERTIFICATE OF SERVICE

2

Pursuant to FRCP 5(b), I certify that I am an employee of **LEWIS BRISBOIS**

3

**BISGAARD & SMITH LLP**, and that on this 10th day of August, 2021, I served the above and

4

foregoing copy of **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be served via

5

electronic service by the U.S. District Court CM/ECF system to the parties on the Electronic Filing

6

System.

7

8

By  /s/  *Susan Awe*

9

an Employee of LEWIS BRISBOIS BISGAARD
& SMITH LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4841-9464-1653.1

28